```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE SOUTHERN DISTRICT OF TEXAS

 3                           MCALLEN DIVISION

 4   MEDCARE EMERGENCY MEDICAL      §    CASE NO. M-21-CV-445
     SERVICES                       §    MCALLEN, TX
 5                                   §    THURSDAY
     VERSUS                          §    MAY 4, 2023
 6                                   §    3:17 PM TO 3:32 PM
     CITY OF PHARR, et al.,          §
 7
                            MOTION HEARING
 8
                 BEFORE THE HONORABLE RICARDO H. HINOJOSA
 9                    UNITED STATES DISTRICT JUDGE

10                            APPEARANCES:

11
            FOR THE PARTIES:           SEE NEXT PAGE
12
            COURT REPORTER:            ANTONIO TIJERINA
13
            COURT CLERK:               UNKNOWN
14

15

16

17

18

19

20

21                    TRANSCRIPTION SERVICE BY:

22                    Veritext Legal Solutions
                    330 Old Country Road, Suite 300
23                        Mineola, NY 11501
                  Tel: 800-727-6396 ▼ www.veritext.com
24
        Proceedings recorded by electronic sound recording; transcript
25                 produced by transcription service.
```

```
1                           APPEARANCES:

2    FOR THE PLAINTIFF:          FRANCISCO R. CANSECO, ESQUIRE
                                 Francisco Canseco
3                                19 Jackson Court
                                 San Antonio, TX 78230
4                                210-901-4904

5

     FOR THE DEFENDANTS:         DENTON NAVARRO ROCHA BERNAL PC
6                                Robert L. Drinkard
                                 701 East Harrison Avenue
7                                Suite 100
                                 Harlingen, TX 78550
8                                956-421-4904

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            MCALLEN, TEXAS; THURSDAY, MAY 4, 2023; 3:17 P.M.

2            THE COURT:  Next case is the very simple case of M-

3    21-445, Medcare Emergency Medical Services Incorporated versus

4    City of Pharr and others.  And I said very simple case, but

5    that was a joke, not truthful.

6            MR. CANSECO:  Your Honor --

7            THE COURT:  Can you now --

8            MR. CANSECO:  -- Francisco Canseco for the plaintiff.

9    It's a pleasure to be here in your fair city.

10           MR. DRINKARD:  Robert Drinkard here on behalf of the

11   defendants.

12           THE COURT:  It's not a pleasure for you to be here?

13           MR. DRINKARD:  Always a pleasure, Your Honor.

14           THE COURT:  Okay.  That was perfect.

15           This case continues to be the same case that's been

16   here for a while.  The plaintiffs complain that they're upset

17   that the City of Pharr decided that they were going to deal

18   with a particular group with regards to ambulance services.  Is

19   that correct?

20           MR. CANSECO:  I think that that's not correct, Your

21   Honor.  If I may just elaborate on that.  First of all --

22           THE COURT:  Well, you represent one group, and the

23   complaint is that the City has entered into some agreements

24   with regard to some other group.

25           MR. CANSECO:  Well, not really.  No, sir.  We have --

1          THE COURT:  Well, then what really?

2          MR. CANSECO:  Well, we have a situation, adequately

3    plead, where they went into negotiations for defunct ambulance

4    company.  They bought the ambulance company notwithstanding --

5          THE COURT:  Right.

6          MR. CANSECO:  -- that there were ambulance services -

7    - servicing Pharr for many years before.

8          THE COURT:  I know, but how can they be prevented

9    from running their own?

10          MR. CANSECO:  They're not.  The prevention is not

11    from running their own.  It's what they did with it and how

12    they behaved towards my --

13          THE COURT:  Well, I mean, you cannot -- I mean, you

14    may be a business that has done business with the city for a

15    period of time, but it isn't for life.

16          MR. CANSECO:  No.  Granted, but what they did was --

17          THE COURT:  I mean, I can understand if, okay, well,

18    they didn't post it or whatever.  But still, I mean, you

19    haven't -- you don't have a contract forever.  You're just

20    saying they've always used it, but now they've gone to somebody

21    else, or some other group, or whatever, or they bought one

22    themselves.

23          MR. CANSECO:  But they have completely foreclosed my

24    client from operating there, and at the same time have moved --

25          THE COURT:  Okay.  How did they foreclose your client

1   from operating?

2           MR. CANSECO:  Well, by --

3           THE COURT:  Your client can continue to deal with

4   whoever calls your client.

5           MR. CANSECO:  Granted, but they've gone around to

6   other areas outside of their jurisdiction and, to use a term,

7   blackballed our client from --

8           THE COURT:  Well, how could they blackball your

9   client to other areas outside their jurisdiction?

10          MR. CANSECO:  Because of their clout with regards to

11  the hospitals and the position of the mayor of the city.

12          THE COURT:  Well, that's the hospital's decision as

13  to who they want or don't want.

14          MR. CANSECO:  Understandably, but you've got a

15  collusion between the mayor and the city council and the board

16  of the hospital that says no longer are we going to accept

17  Medcare Emergency.

18          THE COURT:  Well, the hospital isn't going to say no

19  if somebody wants to call the insurance company of your client,

20  the ambulance company of your client.  I mean, the hospital

21  can't say no.  They're not going to say, "No, unless you come

22  with such-and-such an ambulance.  Then we won't take you."  The

23  hospitals are going to take whoever shows up.

24          MR. CANSECO:  Judge, it's -- in our pleadings, we go

25  into all that as to why --

1              THE COURT:  I mean, you cannot just be upset because

2    there's now a competitor.

3              MR. CANSECO:  No.  That's not the issue, Judge.

4              THE COURT:  Well, then what is the issue?  Your

5    client will continue --

6              MR. CANSECO:  The issue is that they have gone out of

7    their way --

8              THE COURT:  Your client will continue to operate the

9    ambulance service, right?

10              MR. CANSECO:  Correct.

11              THE COURT:  Okay.  And so what is the problem then?

12              MR. CANSECO:  The problem --

13              THE COURT:  The City hasn't said, "You cannot go to

14    this ambulance company.  You have to use this other one.  The

15    City cannot say that and hasn't said that."

16              MR. CANSECO:  The problem is, Your Honor, that they

17    have used monopolistic tactics in order to prevent my client

18    from operating --

19              THE COURT:  So what are the monopolistic things?

20              MR. CANSECO:  Well, what they've done is that they've

21    gone around and they said, "Don't use Medcare EMS," and they've

22    gone around, and they've poached a lot of the employees --

23    longtime employees of Medcare, forcing Medcare to use an

24    enormous amount of overtime with remaining employees so that it

25    costs them a heck of a lot more.

```
 1                And also, they have -- they have taken away a lot of

 2   their business through their monopolistic practices, coupled

 3   with the ordinance that they passed that is going to restrain a

 4   lot of that use, which constitutes a taking of property without

 5   just compensation.

 6                THE COURT:  Okay.  So how are they going to be able

 7   to stop from somebody using whatever service they want to use?

 8                MR. CANSECO:  I'm sorry, Judge.  What?

 9                THE COURT:  I mean, how can they stop anybody from

10   using whatever service they want to use?  I mean, basically

11   what you're saying is, "My client thinks it should only be the

12   only service," and they're saying that they're -- and accusing

13   them of saying that their service is the only service.  There

14   are actually two services in the City of Pharr now.

15                MR. CANSECO:  Now they are.

16                THE COURT:  Yeah.  but I mean, your whole claims are

17   they want to conduct everything, and at the same time, you're

18   trying to say, "Well, my clients should be just the only people

19   that can operate here."

20                MR. CANSECO:  No.  That's not the case, Your Honor.

21                THE COURT:  Well, I mean, you seem to be upset that

22   there's a permit given to another site --

23                MR. CANSECO:  No, sir.

24                THE COURT:  -- from the standpoint of another

25   ambulance service.
```

1          MR. CANSECO:  What we need to develop, Your Honor,

2   and we've adequately pled, is the monopolistic practices, the

3   self-serving practices --

4          THE COURT:  Okay.  But the monopolistic practices --

5   your client can continue operating in the City of Pharr, right?

6          MR. CANSECO:  They can.  Now they can because they've

7   just recently been granted a permit to do so after many months

8   of having applied and it not being acted upon.

9          THE COURT:  Okay.  But there is the ability for your

10   client to operate in the City of Pharr.

11          MR. CANSECO:  Now there is, yes.

12          THE COURT:  Okay.  It's --

13          MR. CANSECO:  But the damage has already been done.

14          THE COURT:  And how has the damage already been done?

15          MR. CANSECO:  The damage has already been done with

16   the practices that the city -- or the ambulance service imposed

17   on the whole area within Hidalgo County to stop my client from

18   further operation.

19          THE COURT:  But how could the City of Pharr stop your

20   client from operating any other place?

21          MR. CANSECO:  By going out there and, like I said,

22   using its political clout to make the other hospitals and other

23   places to have the exclusive use of the Hidalgo County EMS

24   rather than anybody else.

25          THE COURT:  Well, I don't know how they could

1    possibly make any other hospital or any hospital do that.

2              MR. CANSECO:  If --

3              THE COURT:  I mean, in the end, it's going to be

4    whoever the patient wants.

5              MR. CANSECO:  If your chief shareholder --

6              THE COURT:  And your clients are still operating in

7    the City of Pharr, right?

8              MR. CANSECO:  Yes, sir.

9              THE COURT:  Okay.  And so there hasn't been any

10   hospital that says, "We're not going to take you unless you

11   take -- bring in a certain ambulance service."

12             MR. CANSECO:  Right now, as far as -- what I

13   understand, that is the case where hospitals are saying, "We're

14   not going to use your services, and we're going to discourage

15   the use of your services for --"

16             THE COURT:  There cannot -- I cannot believe that

17   there's a hospital that's saying, "We care what ambulance

18   service brings you here," as opposed to, "That ambulance

19   service -- although you have a terrible emergency in the

20   ambulance, we're not going to let you come in as a patient

21   because we don't like that ambulance service, and we want you

22   to use another one, so go back, and get another ride from

23   somebody else, and then come back in."  I cannot believe that a

24   hospital is doing that.

25             MR. CANSECO:  Those facts we seem to --

1          THE COURT:  I mean, and if -- and if you want me to

2     believe that, then this is going to have to be a motion for

3     summary judgment when we actually have evidence rather than

4     just arguments here.

5          MR. CANSECO:  That's right, and that needs to be

6     developed through discovery.

7          THE COURT:  Right.  And I don't have any problem with

8     issuing a docket control order for 120 days.

9          MR. CANSECO:  Perfect.

10         THE COURT:  Because right now you're telling me

11    completely what you think is the case.  They're -- on the other

12    hand, they're saying, "No, that's not the case."  So I cannot

13    make a -- I cannot grant a motion to dismiss when we have

14    arguments from both sides with regards to what the facts are.

15         Having said that, I also understand that you cannot

16    be limited -- or you should not be limited to just one

17    ambulance service.  People should be able to have choices.

18         MR. CANSECO:  I agree with you.  Yes, sir.

19         THE COURT:  And so far, the argument is, "Well,

20    you're telling hospitals not to take us," or whatever.  Well, I

21    don't know that hospitals would do that.  So that's why we're

22    going to issue a docket control order.  And I don't know that

23    you're going to do it in four months.  Can you all do it in

24    four months, or do you all need six months?

25         MR. CANSECO:  I think --

```
1              MR. DRINKARD:  Judge, my only concern with that -- I
2    mean, everything -- pretty much everything he just said is not
3    in his petition.  Let's assume he's raising those things
4    factually now.  He has sued the entire City Commission
5    individually for voting on an ordinance, and he wants to --
6              THE COURT:  Right.  I mean, he's actually saying that
7    the City Commission cannot make any other changes or do
8    anything other than -- my client is the only one that can
9    operate in this city.
10             MR. DRINKARD:  Correct.  They can't -- they can't --
11             THE COURT:  And they have no right to -- even if they
12   think there's cheaper services, or longer services, or
13   whatever, they have no right to let anybody else operate.
14   That's why I don't grant -- I have a problem with that side of
15   the story also.
16             MR. DRINKARD:  No, I understand, Your Honor.
17             THE COURT:  And then it's like, "We don't like the
18   fact that they've given permission to somebody else to operate
19   here because we should be the only ones operating here."
20   That's basically the argument, and I don't know that that's
21   really a violation of any law to say that you will forever be
22   the only ambulance service that can operate in the City of
23   Pharr.
24             MR. DRINKARD:  And I don't think that is the case,
25   Your Honor.
```

```
1              THE COURT:  Well, I mean, there isn't -- nobody has
2    such a permit, and his claim is -- their claim is, "Well, they
3    should've not allowed somebody else, and now they're urging
4    other people to just go to somebody else rather than to us.
5    That's why we'll need a motion for summary judgment."  That's a
6    little different than saying, "Well, you have to do them, or if
7    not, we're not going to let you go to them," or whatever.
8              He also is making some claims about all these
9    hospitals saying that the hospitals are demanding that you use
10   a certain particular ambulance service and that they're not
11   going to take if you're not -- you don't come in on that
12   ambulance service.  Well, he can depose the hospitals too to
13   find out if that's really true.
14             MR. DRINKARD:  Yeah.  He's --
15             THE COURT:  I find it hard to believe because I would
16   think hospitals have a duty.  Whoever shows up in an emergency
17   room, in an ambulance, they're not going to say, "Who brought
18   you?"  They're going to say, "Come on in.  Let me see what's
19   wrong with you."
20             MR. DRINKARD:  Correct.  The concern I have, Your
21   Honor, is he's already said that if he's allowed to do
22   discovery, he wants to depose every City Commissioner and grill
23   them about why they simply voted on an ordinance, and I've
24   urged their qualified immunity.  I don't think he gets to do
25   that without their qualified immunity being heard.  It sounds
```

1   like that's being denied today, but that's what he wants to do.

2   He's made no bones about the fact, "I'm going to grill the

3   mayor and every City Commissioner."

4           THE COURT:  You have a right to file any motion

5   saying to quash the deposition of somebody with regards to

6   you're saying that they don't have the constitutional right to

7   do that.  I don't know how they don't.  I mean, they -- the

8   fact that the mayor or whoever else wants some other thing,

9   that's why they're the mayor.  People can vote against them in

10   the next election or whatever.  I mean, it isn't a matter for

11   the courts to be deciding.

12           MR. DRINKARD:  Well, I mean, to the extent that

13   they're entitled to qualified immunity for simply exercising

14   voting rights --

15           THE COURT:  Right.  And you can go ahead and file

16   that, and go ahead and do that if you want to.

17           MR. DRINKARD:  Okay.  So the motion is denied as to

18   all the defendants, Your Honor?

19           THE COURT:  What?

20           MR. DRINKARD:  The motion to dismiss.

21           THE COURT:  I haven't denied anything with regard to

22   -- the motion to dismiss, yes, but a motion to dismiss on

23   qualified immunity or whatever, yes, you can.  And if you want

24   to do it before they're deposed, you can refile it that way.

25           MR. DRINKARD:  Well, I have urged they're qualified

1    immunity in this first --

2         THE COURT:  Okay.  I know you have, but I just did

3    something right now that's -- may require you to go ahead and

4    file it again.  It's being denied right now without prejudice

5    to refiling based on if and when they get notified that they're

6    going to be deposed or whatever.

7         I've just, I think, made it quite clear to his side

8    of the case the idea that these individuals cannot go ahead and

9    go to whoever they want to for an ambulance service, that's --

10   you can campaign against them at the next election, but you

11   can't stop them from doing whatever they want to do, except

12   unless there's a particular interest or whatever.  I don't know

13   what it is that the claim is here.  They don't want another

14   ambulance company to be used here, but they want to be the only

15   one to be used here.

16        MR. DRINKARD:  That seems to be what they're

17   alleging.

18        MR. CANSECO:  No, Your Honor.  That's not what we're

19   alleging, but that's water under the bridge at this point.

20        I want to make a comment with regards to their claim

21   for immunity.  And I've got cases that I've cited to the Court

22   that show that when you've got ultra vires acts by governmental

23   offices, they --

24        THE COURT:  I'm not ruling on their qualified

25   immunity or whatever.  If they want to file it again when you

1    notice them for depositions, then we can have that argument at

2    that point with both sides having actually known that that's

3    what we're doing.  But at this point, I am issuing a docket

4    control order for 150 days.  Okay?

5                    MR. CANSECO:  Yes, sir.

6                    MR. DRINKARD:  So I would need to re-urge the motion

7    to --

8                    THE COURT:  Yes, if somehow they're going to be

9    deposed or whatever, and you don't want them to be deposed --

10   although I don't understand why they wouldn't be deposed --

11   but, yes.  You can do that.

12                   MR. DRINKARD:  Yeah.  No, I'm definitely going to

13   resist --

14                   THE COURT:  But even after their depositions, if

15   they're entitled to qualified immunity, they're entitled to

16   qualified immunity.  Okay?  But yeah.  You can -- if you want

17   to try to quash their depositions or whatever, you can.  But I

18   mean, I don't --

19                   MR. CANSECO:  We wouldn't --

20                   THE COURT:  Both of these -- his side wants to say,

21   "Get rid of them.  Like us, and we're -- we have a right, and

22   we can be the only ambulance service."  You on the other hand

23   are saying, "No.  You know, I won't let them be deposed or

24   whatever."

25                   MR. DRINKARD:  Just the individual city

```
1    commissioners, Your Honor.  That's what concerns me is he wants
2    to turn this into a circus, badger these commissioners about
3    why they simply voted on an ordinance.
4          THE COURT:  Right.  When you get your notices, you
5    can file your motions with regards to qualified immunity again
6    so that we know for a fact that they're trying to do that.
7          MR. DRINKARD:  Very well, Your Honor.
8          THE COURT:  Okay.  If you all don't have anything
9    else, you all can be excused.  Thank you all very much.
10          MR. CANSECO:  Thank you, Your Honor.
11          THE COURT:  Sure.
12          MR. DRINKARD:  Thank you, Your Honor.
13          MR. CANSECO:  And thank you to your staff.
14          THE COURT:  Well, yeah.  For sure.  But I'm making --
15    I hope you all understood the point that, I mean, we have a
16    plaintiff who says, "Well, we're upset because there's another
17    competitor now being used in our city."
18          And then you threw out the fact that you're claiming
19    that hospitals are refusing to take somebody from Pharr unless
20    they came in a certain -- that's a pretty strong statement to
21    make about as many hospitals as we have in Hidalgo County and
22    in this area.  It's hard to believe that, that hospitals are
23    demanding that you use a certain service.
24          We'll see you all then.  Thank you, all.
25          MR. DRINKARD:  Thank you, Your Honor.  May we be
```

1    excused?

2              THE COURT:  Yes.

3         (Hearing adjourned at 3:32 P.M.)

4                        *  *  *  *  *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              I N D E X

2

3                              RULINGS

4                                              Page          Line

5    Docket Control Order For 150 Days, GRANTED    15            3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:   July 13, 2023