# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 20, 2024
Lyle W. Cayce
Clerk

No. 23-40340

_____

MED CARE EMERGENCY MEDICAL SERVICES, INCORPORATED,

*Plaintiff—Appellee*,

*versus*

ITZA FLORES; AMBROSIO "AMOS" HERNANDEZ; RICARDO MEDINA; DANIEL CHAVEZ; RAMIRO CABALLERO; ROBERTO "BOBBY" CARRILLO,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:21-CV-445

_____

Before HIGGINSON, WILLETT, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

    The Board of Commissioners of the City of Pharr, Texas, passed an ordinance regulating emergency ambulance services in Pharr and two resolutions to purchase ambulances. Based on those actions, a competing ambulance service, Med Care Emergency Medical Services, Inc., sued the City of Pharr, the Mayor, and five City Commissioners. The City and the

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-40340

individual defendants moved to dismiss, asserting in relevant part the individual defendants' qualified immunity from the federal claims. The district court denied the motion to dismiss and denied qualified immunity "without prejudice." We AFFIRM.

I.

Pharr is an incorporated city governed by a Board of Commissioners. The Board is made up of a set of City Commissioners and the Mayor. The Board has the authority to "enact local legislation, adopt budgets, determine policies, and appoint the City Manager, who . . . shall be held responsible to the Board of Commissioners for the execution of the laws and the administration of the government of the City." ROA.115.

In 2021, the Pharr Board of Commissioners passed two resolutions authorizing and ratifying the purchase of Hidalgo County Emergency Service Foundation's (HCEMS) assets.[1] A few weeks later, the Board passed an ordinance regulating ambulance services in Pharr and designating the city-provided EMS service as "the sole provider of emergency ambulance services within the City of Pharr city limits." ROA.142.

Based on the resolutions and ordinance, Plaintiff Med Care Emergency Medical Services, Inc., ("Med Care") sued the City of Pharr, Mayor Ambrosio "Amos" Hernandez, and five City Commissioners—Itza Flores, Ricardo Medina, Daniel Chavez, Ramiro Caballero, and Roberto "Bobby" Carrillo. Med Care alleged violations of the Fifth Amendment and Fourteenth Amendment, federal antitrust statutes, and Texas state laws. As to the individual defendants, Med Care alleged at most that Hernandez and

---

[1] According to the complaint, these resolutions authorized and ratified the purchase of HCEMS as an entity, not just its assets. While the resolutions, attached to the original complaint, suggest otherwise, the exact terms of the purchase are not relevant here.

Caballero had conflicts of interest in the purchase agreement between Pharr and HCEMS, that the individual defendants voted for the resolutions and ordinance, and that some discussion about these measures occurred in a closed meeting.

The City and the individual defendants moved to dismiss the suit, asserting qualified immunity and absolute legislative immunity on behalf of the City Commissioners and Mayor. The district court orally denied the motion to dismiss, clarifying that the individual defendants' qualified immunity claim was "denied . . . without prejudice." ROA.698. Confusingly, the district court also claimed it was "not ruling on [the] qualified immunity [claim]." ROA.698. The court then issued a docket control order, allowing the parties to proceed to discovery. The individual defendants appealed the denial of their qualified immunity.

## II.

### A.

"Jurisdiction is always first." *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (alteration adopted) (citation omitted). "Under the collateral order doctrine, we have jurisdiction to review orders denying qualified immunity." *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022); *see also Backe v. LeBlanc*, 691 F.3d 645, 647–49 (5th Cir. 2012); *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985). The same is true for district court orders "declin[ing] or refus[ing] to rule on a motion to dismiss based on a government officer's defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 484 (5th Cir. 2014). Such orders are "tantamount to . . . order[s] denying the defendants qualified immunity." *Ibid.*

Here, the district court "denied . . . without prejudice" the individual defendants' qualified immunity claim, then stated it was "not ruling on their qualified immunity." ROA.698. But both purported treatments of the

3

immunity claim amount to effective denials. *See Carswell*, 54 F.4th at 310–11; *Zapata*, 750 F.3d at 484. So we have interlocutory jurisdiction to review the qualified immunity claim. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 193–94 (5th Cir. 2009) (reviewing denial of a motion to dismiss raising qualified immunity).

Qualified immunity protects government officials exercising discretionary, executive functions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) ("For executive officials in general, however, our cases make plain that qualified immunity [not absolute immunity] represents the norm."); *see also Cronen v. Tex. Dep't of Hum. Servs.*, 977 F.2d 934, 939 (5th Cir. 1992) ("Executive officials who must necessarily exercise discretion in the scope of their duties are granted qualified immunity from damage suits."). Qualified immunity is supposed to balance "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority," against "the importance of a damages remedy to protect the rights of citizens." *Harlow*, 457 U.S. at 807 (citation omitted).

That balancing rationale does not apply to *legislative* functions. Instead, *absolute* immunity attaches to legislative functions, including those carried out by city councils or commissions. *See Bogan v. Scott-Harris*, 523 U.S. 44, 47–49 (1998). Absolute immunity has deep roots, stretching back to "the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). It seeks to "preserve the principle that the legislature must be free to speak and act without fear of criminal and civil liability." *Id.* at 375. Rather than striking a balance, absolute legislative immunity reflects the principle that "the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Bogan*, 523 U.S. at 52.

B.

As relevant here, the complaint alleges only legislative action. Even liberally construed, the complaint references only two "acts" by any of the individual defendants: (1) participating in closed-meeting discussions about the resolutions and ordinances and (2) voting on those measures.[2] Neither involves an executive function. Rather, both concern the individual defendants' legislative duties as members of the Pharr Board of Commissioners: preparing a regulation and expenditure and then voting on them. So although the individual defendants are likely entitled to *an* official immunity, they are not entitled to qualified immunity.

On appeal the individual defendants have raised only qualified immunity. That is all the district court ruled on, and it is all we have collateral order jurisdiction to decide. Because qualified immunity does not apply to the individual defendants' legislative actions, the denial of qualified immunity is AFFIRMED.

---

[2] At the motion hearing, Med Care attempted to reframe its complaint to focus on allegations that the City and individual defendants "blackballed" Med Care from working with hospitals in the area. ROA.689. But the complaint states no facts suggesting any individual defendant engaged in such conduct. The only portion of the complaint even addressing this "harass[ment]" makes only conclusory statements about the consequences of the ordinance and the "Defendants' conduct." ROA.504 (Complaint ¶ 22); *see also* ROA.507 (Complaint ¶ 27) (similar conclusory allegation). The Federal Rules do not allow us to credit such threadbare, conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009). The complaint therefore fails to state a claim based on any individual defendant's non-legislative actions.